# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 5749 | **DATE** | March 30, 2000 |
| **CASE TITLE** | Shirley Swiech vs. Gottlieb Memorial Hospital, an Illinois Not-for-Profit Corporation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for April 25, 2000 at 9:30 a.m.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's Motion for Summary Judgment [14] is denied. This case is set for status on April 25, 2000 at 9:30.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | MAR 31 2000 | |
| | Notices mailed by judge's staff. | | date docketed | |
| | Notified counsel by telephone. | | | |
| X | Docketing to mail notices. | | docketing deputy initials | 30 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| RJ | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

SHIRLEY SWIECH,  )
  )
         Plaintiff,  )
  )
v.  )
  )  Case No. 98 C 5749
GOTTLIEB MEMORIAL HOSPITAL,  )
an Illinois Not-for-Profit Corporation,  )  Judge Joan B. Gottschall
  )
         Defendant.  )

DOCKETED
MAR 3 1 2000

## MEMORANDUM OPINION AND ORDER

Plaintiff Shirley Swiech has filed charges of age and disability discrimination against her former employer, Gottlieb Memorial Hospital, under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* After receiving a right to sue letter from the Equal Employment Opportunity Commission ("EEOC"), Swiech filed suit in federal court on September 15, 1998. Gottlieb has moved for summary judgment on both her ADEA and ADA claims.

## Background

The following are the facts, as alleged by Swiech and supported by her submissions, that are most relevant to the court's summary judgment determination. Swiech, born in 1945, was hired into Gottlieb's nursing department in 1974. In 1983, she was transferred to the payroll department, where she became the supervisor in approximately 1988. In 1990, Ellyn Chin was hired by Gottlieb as manager of general accounting. In that position, she supervised Swiech. Swiech was reviewed annually until 1994 and received ratings of "meeting" and "exceeding standards." Contrary to Gottlieb's policy, Swiech did not receive annual performance reviews in 1995 or 1996. She was the only employee in the payroll department who did not receive a

performance review during this period.

During the early 1990s, Chin regularly ate lunch with the other two clerks in the payroll department – both of whom were significantly younger than Swiech – but not with Swiech. Chin would also go on walks with the other clerks, but not with Swiech. When Swiech complained that Chin was treating the other clerks preferentially, Chin responded that "they were just young" and that "they had a lot of potential" and that Swiech should "leave them alone." Chin told Swiech that before Swiech could schedule days off work, she had to check with the other payroll clerks to determine if they wanted the day off. If the clerks wanted the day off, they had preference. Chin also told Swiech that if the clerks did not like what they were doing, Swiech should take their work and give them something they liked.

In 1994, Chin told Swiech that she could no longer work overtime and that if there was a need for overtime, the other clerks should work overtime because they made less money. Chin would socialize with the other clerks in the office, but would not speak to Swiech. When Swiech again complained about this preferential treatment, Chin responded that "of course I am more social with the younger girls because we're more on the same age level and we have things in common." Also in 1994, Chin told Swiech that she was "too old and set in her ways" and that she should have "more of an open mind."

In the fall of 1994, Chin suggested that Swiech step down as supervisor. Swiech declined, and Chin said they would talk about it later. Chin kept suggesting that Swiech step down until she finally told Swiech to step down. Chin demoted Swiech from supervisor effective January 1, 1995. Swiech remained at the same compensation and benefits levels.

Prior to 1995, Swiech was involved in implementing a new payroll system. On Swiech's

2

1994 performance review, Chin wrote that Swiech would need to play a "major role" in the system's implementation. After she was demoted, however, Swiech had no further involvement with the new system. Sherrie Kosch-Carbone, the new payroll department supervisor, told Swiech that Chin was looking to get rid of two people in the payroll department once the new system was up and running. When Swiech heard others in the payroll department talking about the new system, she asked about it, and was told by Kosch-Carbone to "take your medication, stay in the corner, don't worry about it." The responsibility for implementing the new system was given to Sharon Martin, another clerk.

In August 1996, Kosch-Carbone told Swiech that she was giving all of Swiech's work to Martin because the new system was up and running and Martin needed work. Swiech asked what work she was supposed to do if Martin was being given all her work. Kosch-Carbone brought Swiech into the accounts payable department and asked a clerk there if there was something for Swiech to do in there to "keep her busy for the next few years." In August 1996, Swiech was told by Kosch-Carbone that Chin was looking to terminate people. Within the year and nine months that Kosch-Carbone was Swiech's supervisor, she made comments to Swiech that she should retire on at least five or six occasions.

Swiech had been diagnosed with lupus, an autoimmune disease, in 1992. She explained to Chin in 1994 that her medical condition was exacerbated by stress, and that stress in the office was causing her physical problems.[1] Although Swiech told Chin that her physician

---

[1] Gottlieb's insistence that "at no time prior to September 1996 did Swiech's physicians ever tell Swiech she required time off or any other accommodation for her medical condition" is not supported by the sources cited by Gottlieb. In any event, it is contradicted by Swiech's deposition testimony. (*See* Swiech Dep. at 128)

3

recommended that she work shorter hours or a modified schedule, her requests for time off, shorter hours, or a modified schedule were refused. When Swiech approached Chin with complaints about tension in the office, Chin told her that she did not want to hear any more complaints from Swiech, and that if she did not like what was going on, she should leave. On another occasion, when Swiech told Chin that her doctor wanted her to cut down her hours or take longer lunches, Chin laughed and replied, "yeah right." Due to Chin's failure to consider her requests, Swiech began using her lunches and breaks to sleep in her car or rest on the toilet.

During 1995 and 1996, Swiech asked Kosch-Carbone to curtail her hours or modify her work based upon her doctor's recommendations. Kosch-Carbone replied: "why don't you retire, I bet your husband will let you retire." Kosch-Carbone also told Swiech that if she took sick time for medical appointments or surgeries, she would not have a job when she got back because Chin was looking to terminate people. Swiech asked Chin if she could transfer out of the payroll department and Chin said she could not.

In June or July 1996, Swiech approached Ed Malindzak, in the personnel department, regarding her medical condition. She explained that she was ill and was afraid to take sick time from work because she had been told that she would be fired. She explained that stress exacerbated her symptoms and that her condition required her to rest. Swiech asked if she could use the Family and Medical Leave Act to take days off or reduce her hours without fear of being fired. Malindzak said he would investigate and get back to her. He never responded to Swiech, and left Gottlieb shortly thereafter.

In August 1996, Kosch-Carbone told Swiech that Chin was looking to get rid of people in the payroll department. In September 1996, Swiech gave notes from her physicians to Kosch-

4

Carbone, which reflected their recommendations that Swiech curtail her hours.

Swiech was called into a meeting with Chin on October 2, 1996. Chin informed Swiech that she was breaking the law by changing her annuity deductions. Chin also told Swiech that her performance had been deteriorating for the past two years, during which time Swiech had not received the mandatory performance reviews. Swiech denied that her performance had been deteriorating and asked Kosch-Carbone why she would wait two years to tell her that it was deteriorating. During the meeting, Swiech became upset and began crying. Brett Wakefield, Gottlieb's vice-president of human resources, entered the meeting and told Swiech that they had to protect the hospital. He asked Swiech if she was able to do her job. Swiech eventually stated that she had to go home and that she was sick, then left the meeting and went to the emergency room. The precise substance and purpose of the meeting is disputed by the parties. What is not disputed is that Swiech has not returned to work since the meeting due to her medical problems.

## Analysis

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### *Statute of Limitations*

A complaining party must file an EEOC charge of discrimination within 300 days of the

allegedly discriminatory act. *See* 42 U.S.C. § 2000e-5(e)(1). Because Swiech filed her EEOC charge on May 30, 1997, claims based on incidents occurring before August 3, 1996 are barred by the statute of limitations. Swiech appears to concede as much, arguing that "while the events occurring outside the 300 day period might not be actionable, they are certainly evidence of Defendant's animus and discrimination." (Resp. at 10)

While the court agrees that an incident occurring outside the 300-day period may not itself constitute the adverse employment action required under the ADA and ADEA, such incidents may be considered as evidence of a hostile work environment – and a resulting constructive discharge – provided that they are closely related to incidents occurring within the 300-day period. *See Koelsch v. Beltone Electronics Corp.*, 46 F.3d 705, 707 (7th Cir. 1995). The court believes that the incidents alleged by Swiech are sufficiently related to warrant consideration by the jury. If Gottlieb believes that particular allegations are not sufficiently related under this standard, those allegations should be brought to the court's attention through a motion *in limine*.

### *Constructive Discharge*

Gottlieb argues that Swiech's discrimination claims fail because she was not subject to an adverse employment action, which is required to make a prima facie case under both the ADA and ADEA. A materially adverse change "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Crady v. Liberty Nat'l Bank and Trust Co. of Indiana*, 993 F.2d 132, 136 (7th Cir. 1993). Swiech has alleged that her material responsibilities were diminished and

6

she was demoted, but the relevant incidents occurred outside the limitations period. As noted above, the time-barred incidents themselves cannot constitute the requisite adverse employment actions. The only way Swiech can establish an adverse employment action under either the ADA or ADEA is through her claim that she was constructively discharged. *See, e.g., Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996) (recognizing that constructive discharge "would obviously be a materially adverse employment action").

Although the Seventh Circuit has not explicitly decided "whether a claim of constructive discharge stemming from a hostile working environment is cognizable under the ADA," it has indicated that "in analyzing claims under the ADA, it is appropriate to borrow from our approach to the respective analog under Title VII." *Miranda v. Wisconsin Power & Light Co.*, 91 F.3d 1011, 1017 (7th Cir. 1996).[2] In the Title VII context, "constructive discharge" refers to "the situation in which an employee is not fired but quits, but in circumstances in which the working conditions have made remaining with this employer simply intolerable." *Lindale v. Tokheim Corp.*, 145 F.3d 953, 955 (7th Cir. 1998). The test is "whether a reasonable employee would have concluded that the conditions made remaining in the job unbearable." *Id.* Of course, "the working conditions must be intolerable in a discriminatory way." *Bragg v. Navistar Int'l Trans. Corp.*, 164 F.3d 373, 377 (7th Cir. 1998).

The court believes that the evidence sets forth a sufficient basis on which a jury could find that Swiech's working conditions had become subjectively and objectively unbearable by

---

[2] The *Miranda* court did not decide whether a constructive discharge claim is cognizable under the ADA because it found that the plaintiff could not prevail on the merits. Courts within this circuit have since found constructive discharge claims to be cognizable under the ADA and have analyzed such claims by analogy to Title VII case law. *See Padilla v. County of Cook*, No. 98 C 1363, 1999 WL 284359, at *5 (N.D. Ill. Apr. 28, 1999) (listing cases).

7

the end of the October 2, 1996 meeting. The evidence, if found credible by the jury, suggests that Swiech's supervisors isolated her from coworkers, stripped her of significant responsibilities, repeatedly subjected her to cruel remarks, pressured her to retire, and ignored her doctor-recommended requests for flexibility in her work schedule. Further, the remarks of her supervisors, coupled with their refusals to accommodate her disability-related requests, indicate that the conditions were the result of discriminatory conduct.

Contrary to Gottlieb's insistence, Swiech's failure to pursue her legal remedies while remaining in her position does not preclude her constructive discharge claim. While "[i]n some situations, the standard of reasonableness will require the employee who wants to make a successful claim of constructive discharge to do something before walking off the job," this is not a hard and fast rule. *Lindale*, 145 F.3d at 955. The significance of Swiech's failure to do so is evidentiary – it may be "compelling evidence" that she, or a reasonable person in her situation, would not actually have found the conditions unbearable. *Id.* Given Swiech's allegations, her failure to take legal action while working at Gottlieb may be weighed by the jury, but does not preclude her claim altogether.

### *Direct or Indirect Proof of Discrimination*

Swiech may prove discrimination under the ADA and ADEA by either direct or indirect proof. Under the direct proof method, Swiech must demonstrate that the adverse conditions she faced – essentially amounting to a constructive discharge – were "motivated by an impermissible purpose: [her] age or disability." *Robin v. Espo Engineering Corp.*, 200 F.3d 1081, 1089 (7th Cir. 2000); *see Monaco v. Fuddruckers, Inc.*, 789 F. Supp. 944, 947-48 (N.D. Ill. 1992), *aff'd*, 1 F.3d 658 (7th Cir. 1993). Thus, to survive a motion for summary judgment, Swiech is required

to present sufficient evidence to allow a rational jury to reasonably conclude that but for her age or disability, she would not have been subject to an adverse employment action. *Robin*, 200 F.3d at 1089.

In order for allegedly discriminatory remarks to qualify as direct evidence of discrimination, Swiech must "show that the remarks were related to the employment decision in question." *Id.* (quoting *Fuka v. Thomson Consumer Elecs.*, 82 F.3d 1397, 1403 (7th Cir. 1996)). Courts "will not read invidious intent into isolated comments that, standing alone, are hardly offensive and remote in time" to the adverse employment action. *Id.*

Based on the discriminatory remarks made by Swiech's supervisors during the period they were making the decisions underlying Swiech's constructive discharge, a rational jury could conclude that her discharge was a direct result of her age, her disability or both. Given that Swiech's supervisors – who determined the substance of Swiech's duties and the nature of her employment environment – were the sources of the discriminatory remarks, this conclusion would not be unreasonable. *Cf. Monaco v. Fuddruckers, Inc.*, 1 F.3d 658, 660 (7th Cir. 1993) (finding that discriminatory remarks made by on-site restaurant manager were not causally related to adverse employment action taken by restaurant chain's central corporate management). Further, these remarks were contemporaneous with decisions and incidents underlying the constructive discharge.

In light of the evidence, Swiech also is entitled to present indirect proof of discrimination to the jury. Because "employers usually are careful not to offer smoking gun remarks indicating intentional discrimination, the Supreme Court established the burden shifting approach as a means of evaluating indirect evidence of discrimination at the summary judgment stage." *Robin*,

9

200 F.3d at 1088 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Under this approach, should Swiech "present sufficient evidence that establishes, by a preponderance of the evidence, a prima facie case of discrimination, a presumption of intentional discrimination arises." *Id.* If Swiech meets this burden, only then does the burden shift to Gottlieb "to come forward with evidence of a legitimate and non-discriminatory reason for the employment decision." *Id.* If Gottlieb does so, then Swiech must prove, by a preponderance of the evidence, that the reasons proffered by Gottlieb "were pretextual for intentional discrimination." *Id.*

To establish a prima facie claim under the ADA or ADEA using this indirect approach, Swiech must show that (1) she was in the protected class (over forty or disabled within the meaning of the ADA); (2) she performed her job to Gottlieb's legitimate expectations; (3) she suffered a materially adverse employment action; and (4) the evidence indicates that more likely than not her age or disability was the reason for the adverse action. *See id.* at 1090. These "elements of proof in an employment discrimination case need not be 'rigid, mechanized, or ritualistic,'" *id.* at 1088 (quoting *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978)), and the Seventh Circuit "has held that a combination of direct and circumstantial evidence, 'none conclusive in itself but together composing a convincing mosaic of discrimination against the plaintiff,' may allow a plaintiff to surpass the summary judgment hurdle." *Id.* at 1089 (citing *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994)).

Swiech has established a prima facie case of discrimination resulting in her constructive discharge. She is within the protected class under both the ADA and ADEA. Up until the crucial and disputed October 2 meeting, her performance reviews had been positive. There is sufficient evidence from which the jury could conclude that Swiech was constructively

10

discharged because of her age or disability. And while Gottlieb has raised questions about Swiech's ability to perform her job, Gottlieb has not shown that the supervisors' decisions and actions underlying the constructive discharge – *i.e.*, refusing Swiech's accommodation requests, isolating her from coworkers, stripping her of responsibilities, subjecting her to offensive remarks – were supported by legitimate, non-discriminatory reasons.

### *Hostile Work Environment*

While the Seventh Circuit has not determined whether a hostile work environment claim may be recognized under the ADEA, *see Halloway v. Milwaukee County*, 180 F.3d 820, 827 (7th Cir. 1999), or the ADA, *see Silk v. City of Chicago*, 194 F.3d 788, 803 (7th Cir. 1999), courts have proceeded under the assumption that such claims are cognizable. *See, e.g., id.* at 804. In doing so, they have evaluated the claims under the hostile work environment analysis used in Title VII cases. *See id.*; *Halloway*, 180 F.3d at 827-28 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

This standard requires Swiech to show that her work environment was both subjectively and objectively hostile. *Harris*, 510 U.S. at 21. The court must consider all the circumstances, including: the frequency and severity of the discriminatory conduct; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with Swiech's work performance. *Id.* at 23. The harassment must be so severe or pervasive as to have altered the conditions of Swiech's employment and have created an abusive working environment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986).

The court believes, based on the evidence submitted by Swiech, that a rational trier of fact could find that Swiech's workplace was permeated with discriminatory conduct sufficiently

severe to alter the conditions of her employment. Significant to this determination is the fact that Swiech's supervisors were the source of most of the discriminatory conduct. Remarks that can be brushed off as merely offensive when made by a peer can take on a different meaning when made by someone with direct control over the terms of a person's employment. Further, the jury could find that the supervisors' preferential treatment of Swiech's coworkers was a result of Swiech's age, disability, or both. Along with the supervisors' consistent disregard of Swiech's disability-related requests for accommodation, this conduct could give rise to an environment that a reasonable person would find hostile or abusive.

### *Qualified Individual Under the ADA*

Gottlieb argues that Swiech is not a "qualified individual with a disability" under the ADA because she has been unable to perform her job with or without reasonable accommodation since October 2, 1996. (Mem. in Supp. of Mtn. for Summ. J. at 2-3) Gottlieb points out that, since January 11, 1997, Swiech has received long-term disability benefits based on her total disability. Further, Swiech's doctors confirm that she is now unable to work. Swiech insists that this argument overlooks the fact that Gottlieb's treatment of her *caused* her to become disabled by exacerbating her condition.

Gottlieb's argument misses the mark, but not necessarily for the reasons offered by Swiech. The fact that an employer has "caused" an employee's disability does not automatically negate the statutory requirement that the employee be capable of performing the job with or without reasonable accommodations. The case law cited by Swiech does not suggest otherwise. Gottlieb overlooks a much more basic proposition: ADA liability does not hinge on whether Swiech is currently capable of performing her previous job, but whether she was capable of

12

performing it at the time she was constructively discharged. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir. 1996) ("The determination as to whether an individual is a 'qualified individual with a disability' must be made as of the time of the employment decision.").

Gottlieb's suggested approach would turn the ADA analysis on its head. If a disabled employee who is capable of performing her job is wrongfully fired because of that disability, she is not precluded from bringing an ADA suit if she becomes incapable of performing her job due to an unrelated, post-firing accident. Similarly, if the natural (or Gottlieb-accelerated) course of Swiech's condition has rendered her unable to perform her previous job, that does not insulate Gottlieb's mistreatment of her while she was still able to perform.

The current state of Swiech's disability may affect the scope or nature of relief afforded her, but that issue may be addressed by the court at a later date, as necessary. Because the status of Swiech's post-termination disability does not preclude her from establishing that the termination itself was wrongful, it is not a proper basis for summary judgment.

### *Reasonable Accommodation Under the ADA*

Gottlieb seeks summary judgment on Swiech's reasonable accommodation claim under the ADA based on Swiech's failure to present Gottlieb with medical documentation of her disability until September 1996. While Swiech's failure to provide such documentation earlier may be relevant to the jury's determination, it does not warrant summary judgment. Providing documentation of a disability "is not required to trigger an employer's duty of reasonable accommodation." *See Feliberty v. Kemper Corp.*, No. 94 C 5684, 1998 WL 246442, at *6 (N.D. Ill. Apr. 21, 1998) (citing *Hunt-Golliday v. Metropolitan Reclamation Dist. of Greater Chicago,*

13

104 F.3d 1004, 1012 (7th Cir. 1997)).

## **Conclusion**

For the above reasons, Defendant's Motion for Summary Judgment is denied.

ENTER:

_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: March 30, 2000