# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 5749 | **DATE** | 5/19/2003 |
| **CASE TITLE** | Shirley Sweich vs. Gottlieb Memorial Hospital | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order as to parties' submissions concerning the nature of the front pay decision. (85-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAY 2 0 2003 | |
| | Notified counsel by telephone. | | date docketed | 91 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| RJ | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SHIRLEY SWIECH, ) | |
| ) | |
| Plaintiff, ) | Case No. 98 C 5749 |
| ) | |
| v. ) | |
| ) | |
| GOTTLIEB MEMORIAL HOSPITAL, ) | |
| an Illinois Not-for-Profit Corporation, ) | Judge Joan B. Gottschall |
| ) | |
| Defendant. ) | |

DOCKETED MAY 2 0 2003

## MEMORANDUM OPINION AND ORDER

Before the court are the parties' submissions concerning the nature of the front pay decision the court will be required to make in this case and the issue of the discovery, if any, which should be allowed prior to the court's decision. The court concludes that in ruling on plaintiff's request for front pay, it will have to decide (1) whether plaintiff is permanently disabled from working and (2) whether defendant proximately caused that disability. The court further concludes that defendant is entitled to discovery on both these issues in advance of a hearing on front pay.

Plaintiff claims that she is permanently disabled from working and seeks front pay for the remainder of her actuarial working life, estimated by defendant to be in excess of $650,000. She concedes that "under ordinary circumstances, a plaintiff is not entitled to front pay for time she is unable to work." Plaintiff's Submission for Hearing on Front Pay at 2. However, plaintiff maintains, "in the instant case, Swiech presented evidence at trial that Defendant *proximately caused* her inability to work, and the jury was instructed in that regard." *Id.* Plaintiff argues that "[b]ased on the large award of compensatory damages, the jury obviously credited Swiech's allegation that Defendant proximately caused the exacerbation of her medical condition, and her

subsequent inability to work." *Id.*

As a preliminary matter, the court must address defendant's contention that since plaintiff claims to be permanently disabled as the result of a workplace injury, her exclusive remedy lies under the Illinois Workers Compensation Act, 820 ILCS §350/5, not the ADA. Defendant cites *Hunt-Golliday v. Metropolitan Water Reclamation District*, 104 F.3d 1004, 1006 (7th Cir. 1997). *Hunt-Golliday*, putting aside the fact that its says nothing about permanent injuries as contrasted to non-permanent injuries, does not support defendant's position. *Hunt-Gollliday* observes that under Illinois law, the exclusive remedy for accidental workplace injuries (which may include intentional torts by co-employees which are accidental from the employer's point of view) is the Workers' Compensation Act, *meaning that plaintiff cannot bring an Illinois intentional infliction of emotional distress claim for a workplace injury*. *Hunt-Golliday* deals with preemption of state claims, not federal statutory claims. Defendant's argument that the Illinois Workers' Compensation Act preempts federal statutory law is neither supported by the case cited to support it nor with the Supremacy Clause. It is rejected.

Plaintiff's claim is that defendant's discriminatory conduct so exacerbated her disability (lupus and depression) that she will never be able to work again and is entitled to front pay for the duration of her actuarial working life. The court admits to some discomfort with this argument. Damages for harm caused to plaintiff by defendant's wrongful conduct that renders her physically and mentally disabled from working seems analytically more akin to compensatory damages, that would in this case be subject to the $300,000 statutory cap, than with front pay, normally awarded to make a terminated plaintiff whole for the period until he or she is able to find another job, when the remedy of reinstatement is for some reason unavailable or

impracticable. *See, e.g., Williams v. Pharmacia*, 137 F.3d 944, 951 (7th Cir. 1998) ("... [F]ront pay may be awarded under Title VII in cases where reinstatement is unavailable.") Indeed, the Civil Rights Act of 1991 explicitly provides for the recovery of future pecuniary losses, as authorized compensatory damages (and an obvious "future pecuniary loss" is loss of income). *See id.* But this is not an issue on which this court is writing on a clean slate. In *Pollard v. E.I. duPont de Nemours & Co.*, 532 U.S. 843, 852 (2001), the Supreme Court, in the course of holding that front pay is not subject to the statutory compensatory damage cap, stated clearly that front pay, not compensatory damages, is the appropriate remedy *whenever* reinstatement is not an option, "whether because of continuing hostility between the plaintiff and the employer or its workers, or because of psychological injuries that the discrimination has caused the plaintiff."[1] Plaintiff is accordingly entitled to front pay to cover the period of time when reinstatement is not possible, because of the aggravation of her disability caused by defendant's discriminatory conduct.

There are two distinct questions embedded in plaintiff's request for front pay in this situation: (1) is she permanently disabled from working and (2) is she permanently disabled from working because of defendant's conduct. Plaintiff does not argue, except by a vague suggestion, that these questions have been answered. She states that "[a]t trial, it was Swiech's *position* that Defendant exacerbated her medical condition, such that she was unable, and remains unable, to return to work at Defendant or anywhere else" and "[b]ased on the large award of compensatory

---

[1] The Seventh Circuit has noted the potential for confusion in separating "the equitable remedy of front pay from the compensatory remedy of lost future earnings." *See Williams v. Pharmacia, Inc.*, 137 F.3d 944, 954 (7th Cir. 1998). *Pollard* seems to cloud the distinction in a case where reinstatement has been made impossible by virtue of the harm to plaintiff caused by defendant's discriminatory conduct.

3

damages, the jury obviously credited Swiech's allegation that Defendant proximately caused the exacerbation of her medical condition, and her subsequent inability to work." Plaintiff's Submission at 1-2 (emphasis added).[2] Plaintiff explains neither why this is obvious nor how, if the jury already awarded her compensatory damages for subsequent inability to work caused by defendant, she is entitled to front pay for what sounds like the same injury.

Simply describing plaintiff's argument exposes its lacunae. Swiech's "position" at trial may well have been that defendant exacerbated her condition to the point that she is permanently disabled from working, but there is no basis for concluding that the jury found anything of the sort; no jury instruction directed the jury to make a finding on this issue and there was no special interrogatory to explain the basis for the compensatory damage award. The jury was instructed that if it found that the defendant discriminated against the plaintiff because of her disability, it could award compensatory damages for "any emotional pain and suffering, mental anguish or other nonmonetary losses that she experienced as a proximate cause of defendant's discrimination." Tr. 871. The jury was instructed on plaintiff's life expectancy for the purpose of their damage calculation, over defendant's objection. Tr. 656, 873. The jury was instructed that compensatory damages should reflect "nonmonetary losses," and the size of the award suggests that it found that those nonmonetary losses were significant and enduring. But the jury was asked to find nothing, and found nothing, concerning physical injury or lost wages, as neither of these were elements of damage according to the instructions given to the jury. And the

---

[2]The jury awarded plaintiff compensatory damages in the amount of $600,00 on her claim of hostile work environment based on disability, $200,000 on her claim of unlawful failure to accommodate and $75,000 for constructive discharge based on disability, plus punitive damages in the amount of $575,000. The damage award was reduced to $300,000 by the court as required by the statutory cap on compensatory damages. 42 U.S.C. §1981a(b)(3)(D).

4

jury was not asked to opine on the possible impact of plaintiff's emotional injury on her ability to work in the future.[3] Nevertheless, plaintiff argued in closing argument that her evidence that defendant caused her permanent disability was undisputed, as indeed it was. Tr. 855.

In an effort to determine what, if anything, relating to front pay can be gleaned from the trial record, the court has reviewed the transcript. Dr. Lynn Meisles, plaintiff's rheumatologist for approximately ten years up until the eve of trial, testified that plaintiff was as of the time of trial unable to work due to her physical problems, particularly lupus and Raynaud's Phenomenon; that lupus, like most medical conditions, can be exacerbated by stress; and that the stressful working condition at defendant could have worsened plaintiff's physical condition. She further testified that plaintiff would have to see a rheumatologist indefinitely, and that lupus has a varied course depending on the individual, with flare-ups and remissions. Lupus flare-ups can be caused by a variety of unknown causes or stressors, including infections. On October 2, 1996, the last day of plaintiff's employment with defendant, Dr. Meisles wrote a letter stating that plaintiff would benefit from a leave of absence from work. Dr. Meisles' testimony establishes neither that plaintiff is at the present date nor will be until the time of her presumptive retirement totally disabled from working, nor that defendant is responsible for the extent of plaintiff's disability which renders her permanently unable to work.

Testimony was also provided by plaintiff's psychiatrist, Dr. Shoba Sinha, who has been treating plaintiff since July 16, 1993, when she came to his clinic complaining of depression. She complained of being stressed at work, along with a number of other sources of stress. From that time until July 1996, she came to the clinic approximately once monthly. In July 1996, a

---

[3]Indeed, the damages instruction, perhaps erroneously, did not instruct the jury that it could award damages for nonmonetary losses to be experienced in the future.

5

colleague, Dr. Warnell, asked Dr. Sinha to assess her depression, which reportedly was not responding to typical medications. At this point plaintiff told Dr. Sinha that she suffered from lupus. He diagnosed her with "major depression, recurrent, mild." Tr. 339. He stated, "By the time I had seen her, she had probably cycled through at least two to three major depressive episodes. So I knew I was dealing with someone who was suffering from a chronic illness of major depression." Tr. 340.[4] Dr. Sinha continued to see her from that point forward every two weeks to a month, when plaintiff was having a more difficult time, to once every two or three months when she was doing better. While she had a number of stressors in her life, "[t]he recurrent theme seemed to be stress related to job situation." Tr. 342.

On October 18, 1996, Dr. Sinha took a history from plaintiff, indicating that she "was quite distressed from problems at work, and it seemed that the lupus was also flaring up around about that time." Tr. 342. She was experiencing mood changes and changes in anxiety level and "her mood was definitely depressed." Tr. 343. On October 23, he wrote a letter recommending that she stay off work until she was able to recuperate, given that "[s]he was experiencing increasing amounts of stress, and also symptoms of both lupus as well as depression, and she was not able to handle her job, I thought." Tr. 345.

Dr. Sinha testified that plaintiff's depression, "[e]ven with several aggressive treatments with medication management . . . has waxed and waned. She's had some good periods of time, but she's also had some very disabling periods of time when she has not been able to function." Tr. 349. He added, "And one area that has been most affected has been her concentration. That's something that she does need in a job situation." Id. He opined that from October 23,

---

[4]There was evidence that plaintiff's first episode of depression occurred when she was 20 years old. Tr. 354.

6

1996, to "the present day," February 21, 2001, plaintiff "is unable to work." He testified that the basis for his opinion was "[h]er difficulty in being able to manage this depression where she would get resolution of these symptoms long enough where she would be able to engage in any kind of employment." Tr. 350. He opined, "This can be a permanent disability." Tr. 350. "[S]he continues to have major depressive episodes which apparently, when they do occur, tend to be very disabling." Tr. 350. He further opined that the job stress at Gottlieb Memorial Hospital "served as a trigger for causing the depression." Tr. 351. He stated that he believed "that the job stress and related tensions that have come from [job hostility at Gottlieb] are continually ongoing at this point in time." Tr. 352. He added, "I'm not sure how that will hold up in the future." *Id.*

Dr. Sinha further testified that lupus contributes to depression, as well as causing physical stress, and that the physical and mental symptoms of plaintiff's lupus contributed to her stress at work. Tr. 356, 361. He testified that it is impossible to determine what causes lupus to flare up. Tr. 378. He further testified that even if stress caused a relapse in plaintiff's depression on October 2, 1996, he does not know that that stress was related to work stress. Tr. 379. However, he testified, it is possible that a hostile work environment could cause stress in turn causing a lupus flare-up.

Dr. Sinha testified that as of the time of trial, plaintiff was unable to work because of the effect of her depression on her ability to concentrate. He stated that "[t]his *can* be a permanent disability," tr. 350 (emphasis added), which is not the same as saying that it *is* a permanent disability. He testified that job stress at Gottlieb was a "trigger" for the depression she was suffering at the time of trial, but he also said that plaintiff had been subject to at least one

7

depressive episode long before she ever worked at Gottlieb. As for the lupus, his testimony was that stress can cause lupus to flare up, and it is possible that a hostile work environment could cause stress that could cause a lupus flare-up. This testimony falls short of providing a firm basis for a finding that plaintiff is now (long after the time of trial) disabled from working and will be disabled from working for the rest of her working life or that defendant proximately caused the extent of that disability.

The Supreme Court, as described above, has made clear that lost income due to a disabled person's inability to work, which is proximately caused by defendant's discriminatory conduct, is properly compensable as front pay. At this point, however, the record provides a scant basis for making such a front pay determination. Plaintiff may, of course, submit the issue to the court on the trial record, but the trial record fails even to make clear that plaintiff's current condition is the same as it was at the time of trial, let alone providing much of a basis for a determination of permanency and proximate causation. On the other hand, if plaintiff wishes to proceed with a hearing and offer additional evidence, defendant is entitled to discovery of the facts and opinions plaintiff intends to present at such a hearing.

This case is set for status on June 5, 2003 at 9:30 a.m. At that time, plaintiff should be prepared to advise the court how she wishes to proceed in light of this order.

ENTER:

_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: May 19, 2003

8